UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                     Case No. 11-51001

BRUEMMER DEVELOPMENT, LLC,          Chapter 7

                   Debtor.                              Judge Thomas J. Tucker
_____/

TIMOTHY J. MILLER, TRUSTEE,

                 Plaintiff,

v.                                                    Adv. Pro. No. 13-4414

SHAUN BRUEMMER,
et al.,

                 Defendants./Third
                 Party Plaintiffs,

v.

DENNIS WHEDON,

                 Third Party Defendant.
_____/

**OPINION REGARDING DISMISSAL OF THIRD-PARTY COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION**

This opinion explains why the Court must dismiss the third-party claims filed by the

Defendants in this adversary proceeding, for lack of subject matter jurisdiction.

I. **Background**

     **A. The Chapter 7 Trustee's adversary complaint**

In this adversary proceeding, the Plaintiff Timothy R. Miller, who is the trustee in the

Chapter 7 bankruptcy case of Bruemmer Development, LLC, seeks a judgment against

Defendants Shaun Bruemmer, Executive Realty, LLC ("Executive Realty"), Bruemmer Builders, LLC ("Bruemmer Builders"), and Arthur Bruemmer (collectively, the "Defendants"), arising out of a transfer by quit claim deed of a condominium unit located at 3441 Belgian Circle, Jackson, Michigan ("Unit 17").[1] The pre-petition transfer was made by the Debtor Bruemmer Development, LLC to Executive Realty. At the time of transfer, Arthur Bruemmer was the sole owner and managing member of both the Debtor and Bruemmer Builders, and Shaun Bruemmer was the sole owner and member of Executive Realty. Arthur Bruemmer is married to Shaun Bruemmer. Shortly after the transfer at issue, Executive Realty sold Unit 17 to third parties for $175,000. Shaun Bruemmer received a check in the amount of $167,428.26 from the sale of Unit 17, and deposited the check into an investment account in her name at Wachovia Investments.

In his adversary complaint, the Trustee alleges, in relevant part, that Debtor's transfer of Unit 17 to Executive Realty was a fraudulent transfer that can be avoided and recovered for the bankruptcy estate, and that he is entitled to a judgment against the Defendants, jointly and severally, of "no less than $175,000" plus interest and costs.[2] The Trustee also alleges that the Defendants were parties to a civil conspiracy "to cause the Debtor to convey Unit 17 and the Unit 17 sale proceeds from [the] reach of Debtor's creditors, including without limitation Fifth Third Bank," and that he is entitled to a judgment against the Defendants, jointly and severally, of "no less than treble the Unit 17 sale price of $175,000" based on his civil conspiracy claim.[3]

---

[1] Am. Compl. (Docket # 50).

[2] *Id*. at Counts I-III.

[3] *Id*. at Count IV.

2

13-04414-tjt    Doc 154    Filed 07/18/14    Entered 07/18/14 16:55:04    Page 2 of 16

### B. The Defendants' third-party complaint

The Defendants filed a third-party complaint against Dennis Whedon ("Whedon"), a family friend and retired attorney, in which they allege that Arthur and Shaun Bruemmer sought legal advice from Whedon regarding a possible transfer of Unit 17 by the Debtor, and Whedon advised them to cause Debtor to transfer Unit 17 to Executive Realty.[4] In Count I of their third-party complaint, captioned "Conspiracy," Defendants "request that in the event that they are found liable on Count IV - Conspiracy of Plaintiff's Complaint, that Third-Party Defendant, Dennis Whedon be found jointly and severally liable with Third-Party Plaintiffs."[5]

In Count II of their third-party complaint, Defendants assert a claim against Whedon for legal malpractice, and "request that this [C]ourt enter judgment against Dennis Whedon in an amount they are found to be justly entitled, together with interest, costs, and attorney fees, including the amount of any judgment which Third-Party Plaintiffs are found to be liable to the Plaintiff."[6]

### C. The Court's Show-Cause Order

On June 19, 2014, the Court entered an order entitled "Order Requiring Third Party Plaintiffs and Third Party Defendant to Show Cause in Writing Why the Court Should Not Dismiss All of the Third Party Claims in this Adversary Proceeding, for Lack of Subject Matter Jurisdiction."[7] The Show-Cause Order noted that "[t]he parties to the third party claims

---

[4] *See* Third-Party Compl. (Docket # 33) at ¶¶ 10-14.

[5] *Id.* at 4.

[6] *Id.* at 5.

[7] Docket # 145, the "Show-Cause Order."

3

apparently agree that the Court has subject matter jurisdiction over these claims," but that "the Court is not bound by that agreement, and must independently determine whether it has subject matter jurisdiction."[8] The Order further stated that "it appears that this Court lacks subject matter jurisdiction over the claims in the third party complaint," and discussed in detail the applicable statutes and case law that support such a conclusion.[9] The Show-Cause Order provided:

> IT IS ORDERED that no later than **July 3, 2014**, the Third Party Plaintiffs and the Third Party Defendant each must file a written response to this Order, showing cause why this Court should not

---

[8] Docket # 145 at 1-2. The Show-Cause Order explained:

> As this Court stated previously in another case:
>
>> The parties cannot create subject matter jurisdiction by mere admission or stipulation. "[F]ederal courts are courts of limited jurisdiction and have a continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before them. Parties can neither waive nor consent to subject matter jurisdiction [.]" *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc.*, 930 F.2d 1132, 1137–38 (6th Cir.1991) (citation and footnote omitted); *see also Spierer v. Federated Dept. Stores, Inc.* (*In re Federated Dept. Stores, Inc.*), 328 F.3d 829, 833 (6th Cir.2003)("'parties may not waive ... or consent to subject matter jurisdiction which a federal court does not properly have.'")(quoting *Universal Consol. Cos. v. Bank of China*, 35 F.3d 243, 247 (6th Cir.1994)). Rather, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed.R.Civ.P. 12(h)(3).
>
> *Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 28-29 (Bankr. E.D. Mich. 2009)(footnote omitted); *see also Swain v. United States Dep't of Treasury, I.R.S.* (*In re Swain*), 437 B.R. 549, 554-55 (Bankr. E.D. Mich. 2010)(same); *CMS North America, Inc. v. DeLorenzo Marble & Tile, Inc.*, 521 F. Supp. 2d 619, 632 (W.D. Mich. 2007), and cases cited therein.

(Show-Cause Order (Docket # 145) at 2 n.1.)

[9] Docket # 145 at 2-5.

4

dismiss all of the claims in the third party complaint for lack of
subject matter jurisdiction.

If any such party does not timely file such a written response, the
Court will assume that such party agrees that this Court lacks
subject matter jurisdiction over the third party claims.[10]

On July 3, 2014, Defendants filed a response to the Show-Cause Order.[11] Third-Party Defendant Whedon did not file a response. In the Response, Defendants argued that this Court has subject matter jurisdiction over their third-party claims. The Court disagrees, however, for the reasons stated below.

## II. Discussion

### A. The scope of the bankruptcy court's jurisdiction

The Supreme Court has noted that:

> Federal courts are courts of limited jurisdiction. They possess only
> that power authorized by Constitution and statute, *see Willy v.
> Coastal Corp.*, 503 U.S. 131, 136–137, 112 S.Ct. 1076, 1080, 117
> L.Ed.2d 280 (1992); *Bender v. Williamsport Area School Dist.*, 475
> U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986),
> which is not to be expanded by judicial decree, *American Fire &
> Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702
> (1951). It is to be presumed that a cause lies outside this limited
> jurisdiction, *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8,
> 11, 1 L.Ed. 718 (1799), and the burden of establishing the contrary
> rests upon the party asserting jurisdiction, *McNutt v. General
> Motors Acceptance Corp.*, 298 U.S. 178, 182–183, 56 S.Ct. 780,
> 782, 80 L.Ed. 1135 (1936).

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

As this Court has previously noted, under 28 U.S.C. § 1334(b), bankruptcy courts have

---

[10] *Id.* at 5.

[11] Docket # 50, the "Response."

subject matter jurisdiction over 'all cases under title 11,' and over 'all civil proceedings' (1) 'arising under title 11' or (2) 'arising in' a case under title 11 or (3) 'related to' a case under title 11.

A "case under title 11" refers "merely to the bankruptcy petition itself, filed pursuant to 11 U.S.C. §§ 301, 302, or 303." *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc.,* 930 F.2d 1132, 1140 (6th Cir.1991).
. . .

"The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, and 'arising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases." *Bliss Technologies, Inc. v. HMI Indus., Inc. (In re Bliss Technologies, Inc.),* 307 B.R. 598, 602 (Bankr. E.D. Mich.2004)(quoting *Wolverine Radio,* 930 F.2d at 1144). These two categories of civil proceedings are "core" proceedings within the meaning of 28 U.S.C. §§ 157(b)(1) and 157(b)(2). *Id.* . . .

Civil proceedings that fall only within the third category of the bankruptcy court's subject matter jurisdiction-its "related to" jurisdiction-are non-core. . . .

The Sixth Circuit has adopted the test articulated in *Pacor, Inc. v. Higgins (In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir.1984), for determining "related to" jurisdiction:

> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*Wolverine Radio*, 930 F.2d at 1142 (emphasis in original)(quoting *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*)*,* 743 F.2d 984, 994 (3d Cir. 1984)(emphasis in original)); *see also Lindsey v. O'Brien,*

6

> *Tanski, Tanzer and Young Health Care Providers of Connecticut*
> (*In re Dow Corning Corp.*), 86 F.3d 482, 489, 490 (6th Cir. 1996).
> In enacting § 1334(b), "Congressional intent was 'to grant
> comprehensive jurisdiction to the bankruptcy courts so that they
> might deal efficiently and expeditiously with all matters connected
> with the bankruptcy estate.'" *Id.* (quoting *Celotex Corp. v.
> Edwards*, 514 U.S. 300, 308 (1995)). Proceedings "related to" the
> bankruptcy case include "more than simple proceedings involving
> the property of the debtor or the estate." *Celotex Corp. v.
> Edwards*, 514 U.S. at 308. And such "related to" proceedings
> include even "suits between third parties which have an effect on
> the bankruptcy estate." *Id.* at 308 n.5. But the Sixth Circuit has
> cautioned against finding "related to" jurisdiction in "situations . . .
> where [there is] an extremely tenuous connection to the estate[.]"
> *See Wolverine Radio,* 930 F.2d at 1142.

*Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 26-28 (Bankr. E.D. Mich. 2009)(footnotes omitted); *see also Swain v. United States Dep't of Treasury, I.R.S.* (*In re Swain*), 437 B.R. 549, 561-62 (Bankr. E.D. Mich. 2010).

### B. Lack of jurisdiction over the third-party claims

Applying the principles discussed above, the Court concludes that there is no "related to" jurisdiction, or any other basis of bankruptcy court subject matter jurisdiction, over the third-party claims in this case. Those claims are state-law claims that are being asserted against a non-debtor, by parties who are neither the debtor nor the trustee in the bankruptcy case. The outcome of such third-party claims will have no conceivable effect on the estate being administered in this Chapter 7 bankruptcy case.

Cases that support the Court's conclusion that there is no "related to" jurisdiction include the following:

- *Scott v. Equitable Fed. Savs. and Loan Ass'n* (*In re German*), 97 B.R. 373, 375 (Bankr. S.D. Ohio 1989)(Chapter 7 trustee filed an adversary complaint against a savings and loan association, objecting to its proof of claim, and for recovery of a money judgment based on the wrongful repossession and sale of the debtor's mobile

7

home, and the savings and loan association, in turn, filed a third party complaint against its servicing agent for indemnification of any liability that may attach to it as a result of the trustee's adversary proceeding; the bankruptcy court held that it did not have "related to" subject matter jurisdiction over the third party action between the two non-debtor parties under *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir.1984), because the third party action could not be said "to have any effect on [the d]ebtors' estate or the underlying bankruptcy case");

- *Barber v. Riverside Int'l Trucks, Inc.* (*In re Pearson Indus., Inc.*), 142 B.R. 831, 849–50 (Bankr. C.D. Ill.1992) (citations omitted) (Chapter 7 Trustee filed a preference action against a non-debtor chassis seller, who in turn filed a third party complaint against another non-debtor seeking indemnity or contribution; the bankruptcy court held that where, as in that case, the third party complaint "involved a dispute between non-debtors which [would] merely determine which party [would] ultimately be responsible in the event that one of the nondebtors is found liable in the underlying adversary proceeding, [subject matter ] jurisdiction [was] lacking"); and

- *GLC Limited v. Smith* (*In re GLC Limited*), 475 B.R. 618, 620-21 (Bankr. S.D. Ohio 2012)(citations omitted)(Chapter 11 debtor filed an adversary proceeding against an individual defendant, seeking to avoid as a fraudulent transfer, fictitious profits the defendant allegedly received from the debtor's principals in a Ponzi scheme; and the defendant, in turn, filed a third party complaint for contribution and indemnification against his ex-wife alleging that if a judgment was entered against him in the adversary proceeding, she was liable for half of the fictitious profits; the bankruptcy court held that "[a] third-party action between non-debtors for indemnification of liability to the debtor on the primary complaint is not a related proceeding" and thus the court "[did] not possess jurisdiction to hear the defendant's count for contribution and indemnification" against his ex-wife).

**1. Defendants' arguments**

Defendants argue that because there are common issues between the main action and the third-party action, it would be an inefficient use of judicial resources to split the litigation into two pieces, and that such a split could lead to inconsistent results. Defendants make the following additional arguments in the Response:

1. If the Court has "jurisdiction over the alleged conspiracy," it has jurisdiction over the entire conspiracy, which, Defendants allege, included Whedon.[12]

---

[12] *See* Response at 2.

2. The cases cited by the Court in its Show-Cause Order in support of a finding that the Court does not have "related to" subject matter jurisdiction "do not involve concerted action (i.e. the essence of a conspiracy), . . . but rather depend upon separate underlying theories of liability which plaintiffs have against defendants" and so should not be applied here.[13] Rather, "[i]n cases involving joint conduct," the Court should use the functional approach of the "intertwining" test articulated in, and employed by, the court in *Ameritrust Co. v. Opti-Gage, Inc.* (*In re Opti-Gage, Inc.*, 128 B.R. 189 (Bankr. S.D. Ohio 1991).[14] Under this approach, Defendants say, the Court has "related to" subject matter jurisdiction over the claims in the third-party complaint.[15]

3. The Court has "related to" subject matter jurisdiction over the claims in the third-party complaint because the findings of the court on the third-party claims "have the potential to impact the [D]ebtor's estate, both from the aspect of the size of the estate and the claims against the estate."[16]

The Court must reject Defendants' arguments.

First, with regard to the judicial economy argument, the Court notes that the possibility of "duplication of judicial resources, and potentially . . . inconsistent results" is not a basis, alone, to find subject matter jurisdiction here. And it does not demonstrate that the bankruptcy court has "related to" jurisdiction. Although the third party claims may be related to the Trustee's claims (which in turn are "related to" the bankruptcy case), this is not enough — it is not enough to establish "related to" jurisdiction merely that a claim is *"related to" a claim that is "related to" the bankruptcy case.*

Second, regarding the argument numbered 1 above, there is no such thing as subject matter jurisdiction over "a conspiracy." Rather, the Court has jurisdiction (or not) over *claims*.

---

[13] *Id.* (bold in original).

[14] *See* Response at 3.

[15] *See id.*

[16] *See id.*.

The claims that the Trustee has against Defendants are separate and distinct from any claims that Defendants may have against Whedon, and the Trustee's claims exist independently of the third-party claims. The Court can determine the merits of the Trustee's claims against Defendants without determining the merits of Defendants' claims against Whedon.

Third, the Court disagrees with Defendants' effort to distinguish the cases cited above (which were also cited in the Show-Cause Order). In substance, the third-party complaint against Whedon seeks indemnity or contribution from Whedon, to the extent Defendants are found liable on the claims in the Trustee's complaint. All three cases cited above are on point. They all applied the *Pacor* test for determining whether the bankruptcy court had "related to" subject matter jurisdiction over third-party complaints seeking indemnity or contribution.

If and to the extent the 1991 bankruptcy court decision in *Opti-Gage* case cited by Defendants is inconsistent with the Court's conclusion in this case, the Court respectfully disagrees with *Opti-Gage*. *Opti-Gage* held that "proceedings are 'related to' bankruptcy cases not only where the outcome of the proceeding may conceivably have an effect upon the estate being administered, but also where parties are sufficiently *intertwined* with the debtor." 128 B.R. at 195 (italics in original). This vague "sufficiently intertwined with the debtor" standard is not consistent with the *Pacor* test, quoted above, which under Sixth Circuit precedent this Court must apply. Under the *Pacor* test, there is no "related to" jurisdiction over the third-party claims in this case.

Fourth, regarding Defendants' argument numbered 3 above, the only argument that attempts to apply the *Pacor* test, Defendants have failed to meet their burden of demonstrating jurisdiction, *see Kokkonen*, 511 U.S. at 377, because they have failed to meet their burden to

10

demonstrate that the resolution of their third-party claims could have any impact on the administration of the Chapter 7 bankruptcy estate. If successful, the *Trustee's claims* against Defendants will benefit the bankruptcy estate, but the outcome of the Defendant's claims against Whedon will have no impact on the bankruptcy estate, and will have no impact on the bankruptcy Debtor, Bruemmer Development, LLC.

### 2. Supplemental jurisdiction (sometimes referred to as "ancillary jurisdiction")

Finally, and even though Defendants have not raised this issue, the Court will consider whether in the absence of "related to" jurisdiction over the third-party claims, the bankruptcy court has "ancillary" or "supplemental" jurisdiction over those claims. In the *Opti-Gage* case cited by Defendants, the bankruptcy court in that 1991 decision stated, in dictum, that in the event that the cross-claims before the court were not "related to" the bankruptcy case, "then it would be appropriate to explore the subjects of ancillary or pendent jurisdiction." 128 B.R. at 193. For this proposition, the court cited *Petrolia Corp. v. Elam* (*In re Petrolia Corp.*), 79 B.R. 686 (Bankr. E.D. Mich. 1987). In the *Petrolia Corp.* case, a bankruptcy judge in this district ruled that because the bankruptcy court is a unit of the district court, the bankruptcy court has the same sort of "ancillary jurisdiction" that the district court does. *See* 79 B.R. at 689. The court held that even if the bankruptcy court has no "related to" jurisdiction, or other jurisdiction, over a claim under 28 U.S.C. § 1334, it has jurisdiction over a claim that is "ancillary" to a claim over which it *does* have § 1334 jurisdiction. *See id.*

The *Petrolia Corp.* court stated that "[f]ederal courts have ancillary jurisdiction to hear nonfederal claims in order to effectively resolve an entire, logically entwined lawsuit," 79 B.R. at 689, and described "ancillary jurisdiction" in this way:

11

> "The term *ancillary jurisdiction*, in fully flowered form, then, is used to consider the court's jurisdiction over claims which are an outgrowth of the claims by the original plaintiff or plaintiffs against the original defendant or defendants. These would include compulsory counterclaims, cross-claims, third-party claims, claims against an additional party as part of one of the above, and intervention as of right."

J. Landers & James A. Martin, *Civil Procedure* 214 (1981).

The contours of ancillary jurisdiction were defined by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), then further limited by *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1975), and *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). *Owen Equipment*, 437 U.S. at 371–373, 98 S.Ct. at 2401–2402.

*Gibbs* involved pendent jurisdiction, but it delineated the constitutional limits of the federal judicial power to hear state law claims when independent bases for federal jurisdiction are not present.

> The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, *there is power in federal courts to hear the whole*. [Emphasis in original.]

383 U.S. at 725, 86 S.Ct. at 1138.

However, *Aldinger* and *Zahn* noted that this federal judicial power may be limited by statute.

> The *Aldinger*, and *Zahn*, cases thus make clear that a finding that federal and nonfederal claims arise from a 'common nucleus of operative fact,' the test of *Gibbs*, does not end the inquiry into whether a federal court has power to hear the non-federal claims along with the federal ones. Beyond this

12

> constitutional minimum, there must be an
> examination of the posture in which the non-federal
> claim is asserted and of the specific statute that
> confers jurisdiction over the federal claim, in order
> to determine whether 'Congress in [that statute] has
> . . . expressly or by implication negated' the
> exercise of jurisdiction over the particular
> non-federal claim.
>
> *Owen Equipment*, 437 U.S. at 373, 98 S.Ct. at 2402, citing
> *Aldinger*, 427 U.S. at 18, 96 S.Ct. at 2422.

*Id.* (emphasis in original)(footnote omitted). Applying these standards, the bankruptcy court held that it had ancillary jurisdiction over the claim before it.

Three years after the decision in *Petrolia*, Congress enacted 28 U.S.C. § 1367, entitled "Supplemental jurisdiction," which became effective December 1, 1990. After the enactment of 28 U.S.C. § 1367, most courts have referred to what the court in *Petrolia* called ancillary jurisdiction as a form of supplemental jurisdiction.[17]

Section 1367(a) provides:

---

[17] *See Womack v. Dolgencorp., Inc.,* 957 F. Supp.2d 1350, 1352 (N.D. Ala. 2013)("In passing 28 U.S.C. § 1367, part of the Judicial Improvements Act of 1990, Congress codified under the name of 'supplemental jurisdiction' the caselaw doctrines of 'pendent' and 'ancillary' jurisdiction.")(quoting 28 U.S.C. § 1367 (commentary) and also relying on *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1563 n. 3 (11th Cir.1994) ("Formerly known as pendent and ancillary jurisdiction, such grounds for the exercise of federal subject matter jurisdiction have now been codified in 28 U.S.C. § 1367.")); *Faulkner v. Eagle View Capital Mgmt.* (*In re Heritage Org., Inc.*), 454 B.R. 353, 371-373, (Bankr. N. D. Tex. 2011)(stating that "[t]he concept of ancillary jurisdiction has been codified, along with the concept of pendent jurisdiction, in the supplemental jurisdiction statute" and that "[n]othing in § 1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories we have historically labelled pendent and ancillary.")(relying, in part, on *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005), and *Griffin v. Lee*, 621 F.3d 380, 385 ("'Congress has codified those principles in the supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading, 28 U.S.C. § 1367.'") (quoting *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 165 (1997))); *Bass v. Denney* (*In re Bass*), 171 F.3d 1016, 1024 (5th Cir. 1999)("Ancillary jurisdiction is now one facet of 'supplemental jurisdiction.'"); *but see United States v. Field*, No. 13-1538, 2014 WL 2898529, *2 (6th Cir. June 27, 2014)(stating that "[w]hereas 'supplemental' or 'pendant' jurisdiction is treated under 28 U.S.C. § 1367, 'ancillary' jurisdiction is governed by case law.").

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367.

Section 1367 codifies the supplemental jurisdiction of the district courts. It does not mention bankruptcy courts or bankruptcy judges, and is not explicitly linked to bankruptcy courts. *See Walker v. Cadle Co.* (*In re Walker*), 51 F.3d 562, 571, 572 (5th Cir. 1995)(italics in original)("While § 1367 addressed the power of the *district courts* to exercise supplemental jurisdiction, it did not discuss the power of the bankruptcy courts to reach pendent parties."). Of course, 28 U.S.C. § 1334, which creates subject matter jurisdiction in the district courts over bankruptcy and bankruptcy-related cases, does not mention bankruptcy courts or bankruptcy judges either. 28 U.S.C. § 157 is the section that authorizes the district court to refer cases and proceedings to bankruptcy judges, and it is limited to the types of matters explicitly covered by § 1334 — *i.e.*, cases under title 11; proceedings arising under title 11; proceedings arising in a case under title 11; and proceedings related to a case under title 11. *See* 28 U.S.C. § 157(a). While § 157 does contain this link to matters of the type covered by the § 1334 jurisdictional statute, § 157 contains no link to the supplemental jurisdiction statute, 28 U.S.C. § 1367.

This Court concludes that as a bankruptcy court, it does not have, and may not exercise, supplemental jurisdiction, which some cases, such as *Petrolia*, have called ancillary jurisdiction. The Court notes first that there is a split of authority over this issue. *See, e.g.*, *Townsquare*

*Media, Inc. v. Brill*, 652 F.3d 767, 771-72 (7th Cir. 2011)(describing the split of authority on "whether bankruptcy courts have supplemental jurisdiction" and citing cases, treatises and law review articles on this issue, but finding it unnecessary to decide the issue); *Rhiel v. Central Mortgage Co. (In re Kebe)*, 444 B.R. 871, 879-880 (Bankr. S.D. Ohio 2011)(describing "a split of authority on the issue of whether bankruptcy courts may properly exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a);" noting that the majority view is that "bankruptcy courts are not authorized to exercise supplemental jurisdiction;" and that "[t]he Sixth Circuit Court of Appeals has not yet addressed the issue;" but finding it unnecessary to decide the issue).

This Court has reviewed cases on both sides of this issue, and agrees with the majority view, that bankruptcy courts do not have supplemental jurisdiction. This was the holding of the United States Court of Appeals for the Fifth Circuit in *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 571 (5th Cir. 1995). The *Walker* court affirmed a district court's decision, that the bankruptcy court lacked jurisdiction over a third-party claim for contribution and indemnity asserted by a defendant in an adversary proceeding against a non-debtor individual. *Id.* at 563. *Walker* reasoned as follows:

> Simply put, even assuming that a district court could exercise jurisdiction supplemental to its bankruptcy jurisdiction described in 28 U.S.C. § 1334, there is nothing in the jurisdictional statutes to indicate that the district court could refer such a case to a bankruptcy court.
>
> Congress has gone to great lengths to determine what proceedings may be tried by bankruptcy courts, and "the exercise of ancillary and pendent jurisdiction by bankruptcy courts could subsume the more restrictive 'relate to' and 'arising in' jurisdiction, such that the latter would be rendered substantially, if not entirely, superfluous." [*Southtrust Bank v. Alpha Steel Co. (In re Alpha Steel Co.)*,] 142 B.R. [465,] 471 [(M.D. Ala.1992)]; *accord* [*Wilcox v. Houghton (In re Houghton)*],164 B.R. [146,] 148
15


> [(Bankr.W. D.Wash.1994)]. Thus, it would be somewhat incongruous to gut this careful system by allowing bankruptcy courts to exercise supplemental jurisdiction to pull into bankruptcy courts matters Congress excluded in its specific jurisdictional grants. *See In re Houghton*, 164 B.R. at 148; [*Fisher v. Federal Nat'l Mortgage Ass'n* (*In re Fisher*), 151 B.R. [895,] 899 [(Bankr. N.D. Ill.1993)]; *In re Alpha Steel, Inc*., 142 B.R. at 471.
>
> Additionally, even if supplemental jurisdiction were thought to "supplement [ ] rather than supplant[ ] 'related to' and 'arising in' jurisdiction, a bankruptcy court exercising the former could hear claims which in effect, merely relate to claims which themselves have only a relate-to connection with the primary case." *In re Alpha Steel, Inc*., 142 B.R. at 471 (internal quotation omitted). It seems unlikely that Congress would have intended such a result, especially after carefully delimiting bankruptcy jurisdiction in § 157. Moreover, as noted above, such a result would contravene the Supreme Court's directive in *Finley* instructing courts not to "read jurisdictional statutes broadly." [*Finley v. United States,* 490 U.S. 545*,*] 549, [109 S.Ct. [2003,] 2007. Thus, we find that the district court correctly concluded that the bankruptcy court could not exercise supplemental jurisdiction over Cadle's third-party claim.

*Walker*, 51 F.3d at 573. The Court agrees with *Walker*, and concludes that bankruptcy courts do not have the authority to exercise supplemental jurisdiction, or as some cases call it, ancillary jurisdiction.

### III. Conclusion

For the reasons stated in this opinion, the Court will enter an order dismissing Defendants' third-party complaint and all of the claims in it, for lack of subject matter jurisdiction.

**Signed on July 18, 2014**　　　　　　　　　　　**/s/ Thomas J. Tucker**
　　　　　　　　　　　　　　　　　　　　　　　**Thomas J. Tucker**
　　　　　　　　　　　　　　　　　　　　　　　**United States Bankruptcy Judge**